## UNITED STATES DISTRICT COURT
### DISTRICT OF MINNESOTA

| | |
|---|---|
| James Paul Campbell, | Case No. 19-cv-1348 (DWF/ECW) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Hennepin County Sheriffs, Saint Paul Police Department, Ramsey County Sheriffs, Hennepin County Parole Probation Office, and Public Storage Incorporated, | |
| Defendants. | |

This matter is before the Court on Defendant City of Saint Paul Police Department's ("the City") Motion to Dismiss (Dkt. 7); Defendant Ramsey County Sheriffs' ("Ramsey County") Motion to Dismiss (Dkt. 13); Plaintiff James Paul Campbell's ("Campbell" or "Plaintiff") Motion for Update, to Enter and Note Default, and for Hearing if Needed, Against and As to All Defendants Except Saint Paul and Ramsey County ("Motion for Status Update and Entry of Default") (Dkt. 25); and Defendants Hennepin County Sheriff's Office's and Hennepin County Probation Office's (collectively, "Hennepin County") Motion to Dismiss (Dkt. 31). The case has been referred to the undersigned United States Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons discussed below, the Court recommends granting the Motions to Dismiss and denying Campbell's Motion for Status Update and Entry of Default.

# I.    BACKGROUND

## A.    Factual Background

The present action relates to Plaintiff's arrest in St. Paul, Minnesota, in August 2010.[1]  Campbell was previously convicted in Texas of possession with intent to distribute approximately four kilograms of cocaine.  *See State v. Campbell*, No. A11-1937 (hereinafter "*State Criminal Case*"), 2012 WL 5476108, at *1 (Minn. App. Nov. 13, 2012), *review denied* (Minn. Jan. 29, 2013); (Dkt. 1 at 8 ¶ 1 ("I was on Texas Interstate Parole for an unlawful sentence of first-degree possession of Narcotics.").)  After his conviction in Texas, Campbell was transferred to Minnesota in December 2005 where he was monitored by the Hennepin County Community Corrections Department.  *Minnesota Court of Appeals Opinion*, at *1; (Dkt 1. at 9 ¶ 9 ("I was forced to live in Texas 1 year before my parole got transferred to Minnesota my home.").)  At some point in 2010, Campbell "sent lengthy letters to a federal judge in which he requested to be allowed to exercise his 'right' to cultivate and consume marijuana, use and possess cocaine or firearms, and travel freely."  *Minnesota Court of Appeals Opinion*, at *1; (Dkt. 1 at 9 ¶ IV.2 ("Only on or about June 2010 I . . . mailed a (a) 'notice of Intent and claim of right affidavit' to federal judge Michael J Davis Minnesota District.").)  The Hennepin County Sheriff's Department took notice of Campbell's letters and organized a team of police officers who began surveillance on Campbell.  *Minnesota Court of Appeals Opinion*, at

---

[1]    "The district court may take judicial notice of public records and may thus consider them on a motion to dismiss."  *Stahl v. United States Dep't of Agric.*, 327 F.3d 697, 700 (8th Cir. 2003) (citing *Faibisch v. Univ. of Minn.*, 304 F.3d 797, 802-03 (8th Cir. 2002)); *Levy v. Ohl*, 477 F.3d 988, 992 (8th Cir. 2007) (state court records).

*1; (Dkt. 1 at 8 ¶ 3 ("Unbeknownst to me . . . Hennepin County Sheriff's violent

Offender task force officers were lurking with intent outside, and had followed me from

the parole office in Brooklyn Center Minnesota . . . .").)

Officers followed Campbell as he drove through the streets of Minneapolis,

Minnesota, and observed what they described as "evasive maneuvers." *Minnesota Court

of Appeals Opinion*, at *1. Campbell led the surveillance team to a public storage facility

in St. Paul, Minnesota. *Id.* Campbell was there briefly, and the police did not observe

Campbell place anything in or remove anything from the storage facility. *Id.* Later,

Campbell was seen entering his residence with a large green plastic bag that was in the

trunk of his vehicle. *Id.* Law enforcement applied for a search warrant to determine if

Campbell rented a unit at the storage facility. *Id.* The district court issued a warrant to

obtain information pertaining to the storage lockers, including the identification of its

renters. *Id.* Police executed the warrant and discovered that Campbell had in fact rented

a unit at that storage facility. *Id.* Law enforcement obtained permission from storage-

facility management to conduct a drug-detection dog sniff in the public hallway outside

the lockers near Campbell's storage unit. *Id.* The drug-detection dog alerted law

enforcement to the odor of narcotics next to Campbell's storage unit. *Id.* Consequently,

law enforcement applied for and obtained a second search warrant to enter Campbell's

storage unit. *Id.* On August 26, 2010, law enforcement entered Campbell's storage

locker and found four handguns, one assault rifle, and a small amount of marijuana. *Id.*

Campbell was charged with possession of a firearm by an ineligible person. *Id.* at

*2. During the original criminal proceeding, Campbell moved to suppress the evidence,

arguing that the search warrants were not supported by probable cause and that the supporting affidavits contained misrepresentations. *Id.* At the motion hearing, Campbell argued that the police lacked reasonable articulable suspicion justifying the dog sniff. *Id.* However, the district court denied Campbell's suppression motion. *Id.* Campbell waived his right to a jury trial and agreed to proceed with a trial on stipulated facts under Minn. R. Crim. P. 26.01, subd. 3. *Id.* The district court found Campbell guilty and sentenced him to 60 months' imprisonment.

Campbell appealed to the Minnesota Court of Appeals, claiming that the search-warrant application did not establish probable cause and that the drug sniff was not supported by reasonable suspicion. *Id.* at *3. Campbell also argued that his conviction should have been overturned because it "interferes with his rights as a sovereign." *Id.* at *5. The Minnesota Court of Appeals affirmed his conviction. *Id.* The Minnesota Supreme Court denied Campbell's request for review. *See Campbell*, 2012 WL 5476108, *review denied* (Minn. Jan. 29, 2013).

**B.    Procedural Background**

On May 22, 2019, Campbell filed his Complaint naming "Hennepin County Sheriffs et al," "Saint Paul Police Department," "Ramsey County Sheriffs et al," "Hennepin County Parole Probation Office et al," and "Public Storage Incorporated" as Defendants. (Dkt. 1 at 1.) Campbell brought this action under 42 U.S.C. § 1983, claiming that his civil rights and other State and Federal constitutional rights were violated. (*Id.* at 6.) Campbell seeks declaratory judgment and damages in the amount of

$6,800,000 or "$1 below the insurance maximum Liability limit for each insured party

. . . whichever is less." (*Id.* at 24.)

On June 6, 2019, the City moved to dismiss Campbell's Complaint under Federal

Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction and Federal Rule of

Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted.

(Dkt. 7 at 1.) Campbell filed a response signed June 19, 2019 and docketed on June 26,

2019 (Dkt. 18) and the City filed its reply on July 3, 2019 (Dkt. 20).

On June 17, 2019, Ramsey County also moved to dismiss Campbell's Complaint

under Rules 12(b)(2) and 12(b)(6). (Dkt. 13 at 1.) Although it appears that Campbell's

June 26 response brief was directed only to the City, Ramsey County filed a reply

addressing the arguments made in that response on July 3, 2019 (Dkt. 22).

On September 4, 2019, Campbell filed a document entitled "MOTION &

AFFIDAVIT FOR STATUS UPDATE, TO ENTER AND NOTE DEFAULT, AND FOR

HEARING IF NEEDED, AGAINST AND AS TO ALL DEFENDNTS [SIC] EXCEPT

SAINT PAUL AND RAMSEY COUNTY." (Dkt. 25.) Because Campbell seeks

"Noting and Entry of Default" and a "hearing for Default Judgment" for Defendants

other than the St. Paul and Ramsey County Defendants, the Court construes this

document (Dkt. 25) as a Motion for Status Update and Entry of Default in which

Campbell also seeks a hearing on a motion for default judgment.

On November 5, 2019, Hennepin County moved to dismiss all claims against it

with prejudice. (Dkt. 31 at 1.) Campbell did not file a response, and Hennepin County

did not file a reply.

C.      **The Complaint**

Campbell, a self-styled "private natural person consumer and 1st party claimant within the meaning of such as defined in the insurance laws of this state and the consumer protection laws," alleges eighteen claims under 42 U.S.C § 1983 against Defendants including: (1) police brutality; (2) dishonesty; (3) fraud; (4) coercion; (5) torture to force confessions & coerced false confession; (6) abuse of authority; (7) intimidation; (8) false arrest; (9) false imprisonment; (10) falsification of evidence; (11) spoliation of evidence; (12) police perjury; (13) witness tampering; (14) police corruption; (15) racial profiling; (16) unwarranted surveillance; (17) unwarranted searches; and (18) unwarranted seizure of Person and/or property.  (*Id.* at 11-23.)  The claims are summarized as follows:

**Police Brutality Claim**

Campbell alleges that "[t]he police were unnecessarily rough with Claimant in speaking and in handling physically in Every encounter and phase as if he were ready to assault them at any time even once he was in custody and handcuffs and despite his calmness in speaking to them about the matter."  (*Id.* at 11.)

**Dishonesty Claim**

Campbell alleges that police officers involved "were responsible for the acquisition, conversion and disposal" of Campbell's property "without taking such measures as would reasonably be required to comply or comport with fair dealing and observation of statute, police, practice, and procedure and they acted Proactively

afterward to cover up that they had done anything that would raise an eyebrow of an honest person in their same or similar role and position." (*Id.* at 11-12.)

### Fraud Claim

Campbell alleges that the officers involved "acted proactively and passively to cover up the true facts, the involved parties['] involvement, and to spoil evidence of the probability that what they did to Claimant was improper and a circumvention of the intent of the civil [r]ights and privacy rights laws without violation of the wording. Which circumvention without violation of the wording intentionally by practices, policies, and procedures developed for such is meant to deceive, mislead, and otherwise dupe persons out of property, rights due notice of those, and to do so the doers gain or to prevent loss of some type of the doers." (*Id.* at 12-13.)

### Coercion Claim

Campbell alleges that the officers involved "threatened and intimidated the Plaintiff to abandon his claims found herein and his rights, and they put him In prison which they knew would increase the likelihood of spoliation of evidence over the passage of time and which would financially cripple him and delay any filings to address the matters." (*Id.* at 13.)

### Torture to Force and Coerced False Confession Claim

Campbell alleges that "having been free, then suddenly not being, after and under the conditions and treatment described was torture" and that he "often considered suicide to stop the mental and emotional anguish and fear of the environment that he was placed

in by the scheme and acts, errors, and omissions of the accused jointly and severally."
(*Id.* at 14.)

### Abuse of Authority Claim

Campbell alleges that Defendants, "to the extent they were conferred authority to exercise and jurisdiction to use discretion therewith," do so by making "choices that the law does not afford them to make and did acts that the law does not provide for in the circumstances that existed and manifested themselves." (*Id.* at 14-15.)

### Intimidation Claim

Campbell alleges that officers had firearms and indicated an intent to use them to gain his compliance if he did not comply with them. (*Id.* at 15.)

### False Arrest and False Imprisonment Claims

Campbell alleges that he was arrested and incarcerated for 11 months but "would not have been but for the accused parties['] acts, errors, and omissions which were not in accord with practice, policy, procedure, civil rights, or common law jural [sic] rights." (*Id.* at 16.)

### Falsification of Evidence and Spoliation of Evidence Claims

Campbell alleges that Defendants participated "in the spoliation of evidence by losing it, never turning it in, or otherwise retelling the story in a version most favorable to their not having done exactly what is explained herein, the manipulation of police reports and incident reports, to the extent that all/any so-called evidence against him was in fact either or both manufactured artificially to incriminate him and protect them from this suit and revealing of these facts or otherwise was falsified and mischaracterized . . . ." (*Id.* at

8

17-18.)  Additionally, Campbell alleges that Defendants breached "clearly known state claim processing laws, policy, and practices" regarding his "notice of claim and notice of intent to sue." (*Id.* at 18.)

### Police Perjury Claim

Campbell alleges that the officers involved knowingly "lied in official forms," "misled ones with official forms," and "failed to recant or correct the records even when prompted in writing by the Plaintiff." (*Id.* at 18-19.)

### Witness Tampering Claim

Campbell alleges that officers attempted to silence him by intimidation "to avoid production of evidentiary testimony in proceedings" and "actively and passively bullied the Public Storage Defendant and its staff implicitly and by the nature of what they do for businesses in the area of warding off break-ins and the like." (*Id.* at 19.)

### Police Corruption Claim

Campbell alleges that Defendants "receiv[e] and solicit[] directly and indirectly the silence of everyone else involved and all witnesses in exchange for their supporting the same effort and scheme of handling which has a value and was offered and/or given to influence improperly[.]  The actions of each and all other persons have knowledge, participation, and evidence in the matters addressed herein." (*Id.* at 20.)  Campbell also alleges that these actions have become "unwritten practice" within law enforcement policies and procedures.  (*Id.*)

## Racial Profiling Claim

Campbell alleges that the officers involved treat minorities and aliens "differently and harsher" than white citizens in the same and similar situations and that they are "statistically known as a fact to engage in racial profiling in policing and patrolling as well as in the bringing and charging of cases." (*Id.* at 21.)

## Unwarranted Surveillance Claim

Campbell accuses Defendants, except for Public Storage, of monitoring him and exhibiting hostility "either due to profiling alone or because the fact that claims against law enforcement is widely known among law enforcement patrols in the areas where the accused officers hail from." (*Id.*)

## Unwarranted Searches and Seizure of Person and/or Property Claims

Campbell alleges that he never obtained his personal property stored in the storage unit and "seized as a result of what occurred along with his right to NOT BE SEIZED unlawfully." (*Id.* at 22.)

Campbell brought his case pursuant to 42 U.S.C. § 1983.[2]  (*See* Dkt. 1 at 6 ("This case is brought by **Campbell** under **42 U.S.C. §1983**.") (emphasis original).)  Construing the Complaint liberally, as the Court is required to do for pro se plaintiffs, *Solomon v.*

---

[2]    To the extent Campbell argues he has some cause of action under "The privacy Act, First Amendment, and Records laws" (Dkt. 1 at 26-27), any First Amendment claims would fail as time-barred for the reasons stated in Section III.C.1, any claims under the Privacy Act of 1974 fail as time-barred and because the Act applies only to federal agencies, *see* 5 U.S.C. § 552a(g)(5); *see Spurlock v. Ashley Cty.*, 281 F. App'x 628, 629 (8th Cir. 2008), and any "Records laws" claim fails at least because Campbell has not identified the "Records laws" at issue, much less alleged how they were violated.

*Petray*, 795 F.3d 777, 786 (8th Cir. 2015), the Court categorizes Campbell's § 1983 claims as follows: (1) excessive force in violation of the Fourth Amendment; (2) malicious prosecution in violation of the Fourth Amendment; (3) unreasonable destruction of property in violation of the Fourteenth Amendment; (4) unreasonable search and seizure in violation of the Fourth Amendment; and (5) false imprisonment.[3]

## II.    LEGAL STANDARD

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the pleadings are construed in the light most favorable to the non-moving party, and the facts alleged in the complaint must be taken as true.  *See Ashley County, Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009).  In addition, a court must afford the plaintiff all reasonable inferences from those allegations.  *See Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 853 (8th Cir. 2010).  At the same time, to withstand a motion to dismiss under Rule 12(b)(6), litigants must properly plead their claims under Federal Rule of Civil Procedure 8 and meet the principles articulated by the United States Supreme Court in *Iqbal* and *Twombly*.

---

[3]    The City argues that Campbell's § 1983 claims fit within the following taxonomy: (1) excessive force in violation of the Fourth Amendment; (2) malicious prosecution in violation of the Fourth Amendment; (3) unreasonable destruction of property in violation of the Fourteenth Amendment; and (4) unreasonable search and seizure in violation of the Fourth Amendment.  (Dkt. 9 at 4-5.)  Ramsey County argues that the only claim apparently directed to Ramsey County is the claim of false imprisonment.  (Dkt. 15 at 4.) Hennepin County argues that Campbell's § 1983 claims fit within the following taxonomy: (1) excessive force in violation of the Fourth Amendment; (2) malicious prosecution in violation of the Fourth Amendment; and (3) unreasonable search and seizure in violation of the Fourth Amendment.  (Dkt. 33 at 6.)

Under Rule 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The pleading standard articulated by Rule 8 "does not require detailed factual allegations, but it [does demand] more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). A "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Thus, to "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). "[T]he plausibility standard, which requires a federal court complaint to state a claim for relief that is plausible on its face, . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Ritchie v. St. Louis Jewish Light*, 630 F.3d 713, 717 (8th Cir. 2011) (internal quotation and citation omitted). "Determining whether a complaint states a plausible claim for relief will, . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted).

Following *Twombly* and consistent with *Iqbal*, the Eighth Circuit explained:

> While a plaintiff need not set forth "detailed factual allegations," *Twombly*, 127 S. Ct. at 1964, or "specific facts" that describe the evidence to be presented, *Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197, 2200 (2007)

> (per curiam), the complaint must include sufficient factual allegations to provide the grounds on which the claim rests. *Twombly*, 127 S. Ct. at 1965 n. 3. A district court, therefore, is not required "to divine the litigant's intent and create claims that are not clearly raised," *Bediako*, 354 F.3d at 840, and it need not "conjure up unpled allegations" to save a complaint. *Rios v. City of Del Rio*, 444 F.3d 417, 421 (5th Cir. 2006) (internal quotation omitted).

*Gregory v. Dillard's, Inc.*, 565 F.3d 464, 473 (8th Cir. 2009). The Eighth Circuit has interpreted the "face" of the complaint as including public records and materials embraced by the complaint as well as materials attached to the complaint. *C.H. Robinson Worldwide, Inc. v. Lobrano*, 695 F.3d 758, 764 (8th Cir. 2012).

Federal Rule of Civil Procedure 55(a) provides: "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). "When a party 'has failed to plead or otherwise defend' against a pleading listed in Rule 7(a), entry of default under Rule 55(a) must precede grant of a default judgment under Rule 55(b)." *Johnson v. Dayton Elec. Mfg. Co.*, 140 F.3d 781, 783 (8th Cir. 1998).

### III.    DEFENDANTS' MOTION TO DISMISS

The City, Ramsey County, and Hennepin County move this Court to dismiss on similar grounds. (*Compare* Dkt. 9, *with* Dkt. 15, *and* Dkt. 33.)

The City argues Campbell's claims should be dismissed because (1) this Court lacks personal jurisdiction over the City due to improper service, (2) the only City entity named by Campbell is the Saint Paul Police Department, which is not a legal entity subject to suit, (3) Campbell's claims fall outside Minnesota's six-year statute of

limitations, (4) Campbell's claims are barred by claim preclusion, and (5) nearly all of Campbell's claims are barred by *Heck v. Humphrey* preclusion.  (Dkt. 9 at 1.)

Ramsey County argues Campbell's claims should be dismissed because (1) this Court lacks personal jurisdiction over the County due to improper service, (2) the only Ramsey County Defendant named in the lawsuit is the Ramsey County Sheriff's Office, which is not a legal entity subject to suit, (3) Campbell's claims fall outside of the six-year statute of limitations, and (4) Campbell fails to state a claim for false imprisonment against Ramsey County.  (Dkt. 15 at 1.)

Hennepin County argues Campbell's claims should be dismissed because (1) Hennepin County Sheriff's Office and Hennepin County Probation are not legal entities subject to suit, (2) lack of personal jurisdiction over Hennepin County due to insufficient service of process on Hennepin County, (3) Campbell's claims fall outside the six-year statute of limitations, (4) Campbell's claims are barred by claim preclusion, (5) Campbell's claims are precluded under *Heck v. Humphrey*, and (6) Campbell fails to state a claim upon which relief may be granted.  (Dkt. 33 at 1.)  The Court addresses each argument below.

## A.    Entity Not Subject to Suit

The City, Ramsey County, and Hennepin County argue that Campbell's claims against the Saint Paul Police Department, the Ramsey County Sheriff's Department, the Hennepin County Sheriff's Department, and Hennepin County Probation should be

dismissed because the named entities are not subject to suit. (Dkt. 9 at 5-6; Dkt. 15 at 5; Dkt. 33 at 6-7.) In his response to the City's motion, Campbell argues:

> [I]f a munipal [sic] police agency is "doing business" and can be deemed to be doing business, and have and maintain insurances that otherwise waive presumptions which exempt them from the right to sue and be sued then they may–in fact– sue and be sued within the terms, triggers, and stated coverages of that contract and policies and it is a generally very broad waiver within those parameters.

(Dkt. 18 at 27.) Campbell cites *Anderson v. City of Hopkins*, 805 F. Supp. 2d 712 (D. Minn. 2011), in support of this argument. However, *Anderson* holds that "Municipal police departments are not legal entities subject to suit," 805 F. Supp. 2d at 719, and thus supports the City's argument, not Campbell's.

The law establishing whether the named Defendants are entities subject to suit is straightforward. Under Federal Rule of Civil Procedure Rule 17(b), the "[c]apacity to sue or be sued is determined as follows . . . by the law of the state where the court is located." Fed. R. Civ. P. 17(b). As such, the Court looks to Minnesota law to determine whether the named City and County Defendants can be sued by Plaintiff. Minnesota law only grants the power to "sue and be sued" to the county itself. *See* Minn. Stat. § 373.01, subd. 1(a)(1) ("[E]ach county is a body politic and corporate and may . . . [s]ue and be sued."); *see also Calhoun v. Washington Cty. Cmty. Servs. Child Support Unit*, No. 18-cv-1881 (ECT/HB), 2019 WL 2079834, at *3 (D. Minn. Apr. 23, 2019), *R&R adopted*, 2019 WL 2075870 (D. Minn. May 10, 2019) (citing Minn. Stat. §§ 373.01, 373.08) (citations omitted) ("Thus, it is the county itself that must be named in a lawsuit involving the actions of one of its departments. Accordingly, departments within a

county government are not subject to a court's jurisdiction, and county governmental departments cannot be named in lawsuits.").

Indeed, courts in the Eighth Circuit and this District have consistently held that county departments are not legal entities subject to suit separate from the county itself. *See*, *e.g.*, *De La Garza v. Kandiyohi County Jail*, No. 01-1966, 2001 WL 987542, at *1 (8th Cir. 2001) (unpublished) (affirming summary dismissal of prisoner civil rights action against county jail and county sheriff's department, "because neither named party was a suable entity"); *Doe v. Mower Cty. Health & Human Servs. Office of Child Support*, No. 18-cv-3221 (WMW/KMM), 2019 WL 3570870, at *3 (D. Minn. May 13, 2019), *R&R adopted*, 2019 WL 3824256 (D. Minn. Aug. 15, 2019) ("[C]ourts consistently hold that arms of local governments, such as county departments or county agencies, are not subject to suit.") (citations omitted); *Tisdell v. Crow Wing Cty.*, No. CIV. 13-2531 PJS/LIB, 2014 WL 1757929, at *4 (D. Minn. Apr. 30, 2014) ("Because sheriff's departments are not legal entities subject to suit, the Court recommends that Plaintiffs' Complaint as alleged against the Crow Wing County Sheriff's Department be dismissed with prejudice."); *Rowell v. Ramsey Cty. Sheriff's Dep't*, No. CIV. 12-1656 JNE/FLN, 2012 WL 3430768, at *2 n.1 (D. Minn. July 23, 2012) ("The Court also notes that Ramsey County Sheriff's Department is not a cognizable legal entity that has the capacity to be sued."), *R&R adopted*, 2012 WL 3429402 (D. Minn. Aug. 14, 2012) (citation omitted); *Franco v. Grant*, No. 09-cv-552 (JRT/SRN), 2010 WL 653855, at *6 (D. Minn. Feb. 22, 2010) (holding county sheriff departments are not legal entities subject to suit separate from the county itself); *Iheme v. Hennepin Cty. Sheriff Dep't*, No. CIV. 12-2271

DWF/JJK, 2012 WL 8023743, at *2 (D. Minn. Nov. 6, 2012), *R&R adopted*, 2013 WL 1969640 (D. Minn. May 13, 2013); *In re Scott County Master Docket*, 672 F. Supp. 1152, 1163, n.1 (D. Minn. 1987) (holding that Minnesota sheriffs' departments "are not legal entities subject to suit"), *aff'd*, 868 F.2d 1017 (8th Cir. 1989).

Similarly, this District has also held that "[m]unicipal police departments . . . are not entities subject to suit." *Ernst v. Hinchliff*, 129 F. Supp. 3d 695, 708 (D. Minn. 2015) (citing *Anderson*, 805 F. Supp. 2d at 719). Rather, municipal police departments "are simply departments or subdivisions of the City government." *Ketchum v. City of West Memphis, Ark.*, 974 F.2d 81, 82 (8th Cir. 1992) ("The West Memphis Police Department and West Memphis Paramedic Services are not juridical entities suable as such.").

Here, the Complaint names "Hennepin County Sheriffs et al", "Saint Paul Police Department et al", "Ramsey County Sheriffs et al", and "Hennepin County Parole Probation Office et al" as Defendants. None of those entities are subject to suit. Accordingly, the Court recommends that Plaintiff's claims against Defendants "Hennepin County Sheriffs et al", "Saint Paul Police Department et al", "Ramsey County Sheriffs et al", and "Hennepin County Parole Probation Office et al" be dismissed without prejudice.[4] *See De La Garza v. Kandiyohi Cty. Jail, Corr. Inst.*, 18 F. App'x 436, 437 (8th Cir. 2001) (modifying dismissal of non-suable entity to dismissal without prejudice).

---

[4] Campbell did not file an amended complaint naming the City, Ramsey County, or Hennepin County as defendants (rather than the non-suable entities) as permitted under Federal Rule of Civil Procedure 15(a)(1)(B), nor did he seek leave to amend at any time.

**B.    Failure to Perfect Service**

The City, Ramsey County, and Hennepin County argue that the Court lacks personal jurisdiction over any City and County entity due to improper service. (Dkt. 9 at 6; Dkt. 15 at 5-7; Dkt. 33 at 8-9.) "If a defendant is improperly served, a federal court lacks jurisdiction over the defendant." *Printed Media Servs., Inc. v. Solna Web, Inc.*, 11 F.3d 838, 843 (8th Cir. 1993) (citing *Dodco, Inc. v. Am. Bonding Co.*, 7 F.3d 1387 (8th Cir. 1993); *Sieg v. Karnes*, 693 F.2d 803, 807 (8th Cir. 1982)). The plaintiff has the burden of establishing whether service of process was proper. *See Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A.*, 51 F.3d 1383, 1387 (8th Cir. 1995). "[A]ctual notice of the pending action is not sufficient if there has not been compliance with the plain requirements of Rule 4." *Baden v. Craig-Hallum, Inc.*, 115 F.R.D. 582, 586 n.4 (D. Minn. 1987); *see also Adams v. AlliedSignal Gen. Aviation Avionics*, 74 F.3d 882, 885 (8th Cir. 1996) (citing *Printed Media Servs.*, 11 F.3d at 843) ("[I]f AlliedSignal, Inc., was improperly served, the district court lacked jurisdiction over that defendant whether or not it had actual notice of the lawsuit.").

Under Rule 4(j)(2) of the Federal Rules of Civil Procedure, "[a] state, a municipal corporation, or any other state-created governmental organization that is subject to suit must be served by: (A) delivering a copy of the summons and of the complaint to its chief executive officer; or (B) serving a copy of each in the manner prescribed by the state's law for serving a summons or like process on such a defendant." Fed. R. Civ. P. 4(j)(2). Under Minnesota law, service upon a public corporation requires delivering a copy of the summons and complaint to the chair of the county board or the county auditor for a

county defendant, Minn. R. Civ. P. 4.03(e)(1), and by delivering a copy of the summons and complaint to the chief executive officer or the clerk for a city defendant, Minn. R. Civ. P. 4.03(e)(2). "The mayor shall be the chief executive and administrative officer of the City of Saint Paul." Saint Paul, Minn., Code of Ordinances § 2.01(a) (2019).

As to the City, documents filed with the Complaint indicate that Campbell mailed the summons and complaint via certified mail to "Saint Paul Police Department" at "367 Grove St., St Paul, MN 55101," which is the office of the Chief of the Saint Paul Police Department. (Dkt. 1-1 at 27-28; *see also* Dkt. 27-4 at 1.) Campbell also filed a return of service stating that a copy of the Summons and Complaint was left with an office assistant at the "Saint Paul Police Department" on July 1, 2019. (Dkt. 23 at 4.) In his response to the City's Motion to Dismiss, Campbell contends that he "had a copy delivered via USPS mail to the Chief Executive of the City and the City General Counsel." (Dkt. 18 at 28.) Even if this were the case, service by mail does not constitute proper service absent a valid acknowledgement of service returned by the defendant. *Roberson v. Minnesota*, Case No. 16-cv-2578 (ADM/HB), 2016 WL 11198359, at *10 (D. Minn. Dec. 19, 2016) (citing Fed. R. Civ. P. 4; Minn. R. Civ. P. 4.03, 4.05). Here, there is no evidence that any person or entity associated with the City returned a valid acknowledgment of service for any document sent by mail, and the City Clerk swears in an affidavit that she searched for and did not locate any document served on behalf of the City by Campbell in this case. (*See* Dkt. 10 at ¶¶ 5-6.) Consequently, Campbell has not met his burden of validating his method of service upon any City entity was proper. *See Northrup King*, 51 F.3d at 1387.

As to Ramsey County, documents filed with the Complaint indicate that Campbell mailed the summons and complaint via certified mail to "Ramsey County Sheriffs et al" at "1411 Paul Kirkwold Dr., MN 55112," which is the address of the patrol station operated by the Ramsey County Sheriff's Office.  (Dkt. 1-1 at 25-26; *see also* Dkt. 27-3 at 1.)  Additional documents filed indicate a copy of the Summons and Complaint was delivered to Tim Gulden[5] at 425 Grove Street in Minnesota on July 23, 2019.  (Dkt. 23 at 5.)  Even so, nothing in the record shows that either the Chief Executive Officer of Ramsey County, the Chair of the Ramsey County Board, or the Ramsey County Auditor was properly served pursuant to Minnesota Rule of Civil Procedure 4.03(e).  Moreover, Ramsey County filed a letter indicating that Campbell had still not properly served them on August 9, 2019.  (Dkt. 24.)  Therefore, Campbell has not met his burden of validating his method of service upon any Ramsey County entity was proper.  *See Northrup King*, 51 F.3d at 1387.

As to Hennepin County, documents filed with the Complaint indicate that Campbell mailed the Summons and Complaint via certified mail to "Hennepin County Sheriffs et al" at "9401 83rd Ave N, Brooklyn Park, MN 55445."  (Dkt. 1-1 at 31-32; *see also* Dkt. 27 at 1.)  Additional documents filed indicate Campbell attempted to serve Defendant Hennepin County Sheriff's Office by mailing a copy of the Summons and Complaint by certified mail to Chief Deputy Sheriff Tracey Martin at "350 South 5th

---

[5]    According to Ramsey County's website, Tim Gulden is the Commander of Data Practices.  *See* Ramsey County, *About the Sherriff's Office*, https://www.ramseycounty.us/your-government/leadership/sheriffs-office/about-sheriffs-office/public-information-office (last visited Jan. 6, 2020).

Street, Room #6, Minneapolis, MN 55415" on July 1, 2019. (Dkt. 23 at 2.) According to

Campbell's Certificate of Service, service was refused. (*Id.*) On the same day, Campbell

attempted to personally serve Belene Zeleke, an employee of Defendant Hennepin

County Probation Office, at "9401 83rd Ave N, Brooklyn Park, MN 55445," but the

service was returned unexecuted. (Dkt. 23 at 6.) There is no evidence that Campbell

tried to serve (much less accomplished service) on the Chief Executive Officer of

Hennepin County, the Chair of the Hennepin County Board, or the Hennepin County

Auditor, or otherwise suggesting Campbell has met his burden to establish whether

service upon any Hennepin County entity was proper. *See Northrup King*, 51 F.3d at

1387.

Plaintiff's failure to properly serve any City, Ramsey County, or Hennepin County

entity is another basis for dismissing Plaintiff's claims against them.[6] The Court

therefore recommends dismissing Plaintiff's claims against the City and County

Defendants without prejudice for lack of personal jurisdiction.[7]

---

[6]    Where service of process is defective, the court has discretion under Federal Rule of Civil Procedure Rule 4 to either dismiss the action without prejudice or extend the time in which service may be made where "good cause" is shown for the failure. Fed. R. Civ. P. 4(m). The Court notes, however, that Plaintiff has not shown good cause, or any cause, for his failure to properly effect service. In fact, even after Defendants set forth their improper service arguments in their Motions to Dismiss filed on June 6, 2019 (the City), June 17, 2019 (Ramsey County), and November 5, 2019 (Hennepin County), Plaintiff took no action to effect service or seek additional time to do so. Accordingly, and because the City and County entities Campbell sued are not suable entities (*see* Section III.A), the Court will not extend the time for service.

[7]    Even if Plaintiff's claims were construed as claims against the City of St. Paul, Ramsey County, and Hennepin County, the Court would still recommend their dismissal for improper service. Moreover, as noted above, Plaintiff did not avail himself any

C.    **Failure to State a Claim**

The City, Ramsey County, and Hennepin County also seek dismissal of
Campbell's claims against them under Federal Rule of Civil Procedure 12(b)(6) for
several reasons, which are discussed below.  (Dkt. 7; Dkt. 13; Dkt 31.)  For the reasons
stated in Sections III.A and III.B, the Court has recommended dismissal without
prejudice of all of Campbell's claims as the City and County Defendants.  However, in an
abundance of caution, the Court sets forth alternative grounds for dismissing claims
asserted against the City, Ramsey County, and Hennepin County in this Section.

1.    **Statute of Limitations**

The City, Ramsey County, and Hennepin County argue that Campbell's claims
against them are barred by Minnesota's six-year statute of limitations.  (Dkt. 9 at 7-8;
Dkt. 15 at 7-9; Dkt. 33 at 9-11.)  Specifically, they contend that Minnesota's six-year
limitations-window closed in Summer 2016 for the events occurring in Summer 2010.
*(Id.)*  Anticipating an argument that the statute of limitations on any false imprisonment
claim did not begin to run until he finished his term of incarceration in January 2014,
they also contend that, to the extent there was any City or County involvement with his
imprisonment, the claim ended once Campbell was arraigned.  *(Id.)*  Because Campbell's
criminal trial occurred in June 2011, *Campbell v. Reiser*, No. 14-96 (PAM/FLN), 2015
WL 671998, at *2 (D. Minn. Jan. 20, 2015), they argue the statute of limitations on any

_____

opportunity to amend his Complaint to name the proper entities, instead arguing in
response to the City's Motion that a "muni[ci]pal police agency" could be sued.  (Dkt. 28
at 27.)

false improvement claim expired well before he filed his Complaint on May 22, 2019.

(*Id.*)

> In response, Campbell argues:
>
> More importantly, they claim that they received documents from CAMPBELL that they never responded to and which thusly made express or expressly implied contracts or private agreements between the parties, their successors, assigns, agents, and principals and violated them — such were under seal — and to the extent they may have been breached the statute of limitations on sealed contract breach has not ran and neither has that for expressly implied contract breach where records were challenged as inaccurate and the company only recently failed to comply with correction requests.

(Dkt. 18 at 28.)

This argument, along with numerous other statements in Campbell's Complaint and brief, indicate that Campbell is a follower of the "Sovereign Citizens" movement. (*E.g.*, *id.* at 4 ("Plaintiff . . . is a private natural person consumer and 1st party claimant within the meaning of such as defined in the insurance laws of the state and consumer protection laws"); *id.* at 8 ("I as a living man and secured party mailed a notice of intent and claim of right after David to federal judge Michael J Davis Minnesota District.  Also attached with that affidavit was definitions ucc-1 financing statement and a notice of child of God status."); *id.* at 31 (signing response "All Rights Reserved UCC-1-308").) Legal arguments based on Sovereign Citizens' theories are meritless and do not warrant extended discussion.  *See United States v. Simonson*, 563 F. App'x 514 (8th Cir. 2014) (per curiam); *United States v. Hardin*, 489 F. App'x 984, 986 (8th Cir. 2012) (per curiam); *United States v. Jagim*, 978 F.2d 1032, 1036 (8th Cir. 1992) (sovereign citizen arguments "are completely without merit, patently frivolous, and will be rejected without

expending any more of this Court's resources on their discussion."). The Court will address the City and Counties' statute of limitations arguments below based on the applicable law.

State statute of limitations for personal-injury torts applies to actions under 42 U.S.C. § 1983. *Wallace v. Kato*, 549 U.S. 384, 387-88 (2007). Under Minnesota's personal-injury statute, § 1983 claims are limited to six years. *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 618 n. 3 (8th Cir. 1995); *see also* Minn. Stat. § 541.05, subd. 1(5) (2019). Thus, Campbell was required to file his lawsuit within six years of the date his claims accrued. "[T]he accrual date of a § 1983 cause of action is a question of federal law that is not resolved by reference to state law." *Wallace*, 549 U.S. at 388. "Section 1983 claims accrue 'when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief.'" *Humphrey v. Eureka Gardens Pub. Facility Bd.*, 891 F.3d 1079, 1081-82 (8th Cir. 2018) (quoting *Wallace*, 549 U.S. at 388) (cleaned up).

Here, Campbell filed his Complaint on May 22, 2019 (Dkt. 1), alleging that police surveilled him, unlawfully searched his storage facility, arrested him, and unlawfully held at Ramsey County Jail around August 2010 (*id.* at 8). Additionally, Campbell claims he was unable to post bond and was falsely imprisoned at Ramsey County Jail for eleven months following his arrest. (*Id.* ¶ 4.) Even construing the pro se Complaint liberally, *Solomon*, 795 F.3d 786, it appears none of Campbell's claims appear to relate to matters other than his arrest in August 2010. In fact, Campbell appears to concede that his claims are related solely to his 2010 arrest by stating in his Complaint that "authorities named

24

and involved targeted him unfairly and based solely on race" (Dkt. 1 at 2), that "[t]hey

targeted him because he was a minority" (*id.*), and that "the parties gave false information

to the storage Company about Campbell, which was believed and relied upon, to gain

access to Campbell's storage unit . . . and ultimately was a part of a decision to arrest and

lock him up for about 60 months total" (*id.* at 2-3).  Consequently, the Court finds that

Campbell's claims are time-barred because they accrued around August 2010, the

limitations period expired in August 2016, and Campbell did not file this lawsuit until

May 22, 2019.

To the extent Campbell argues his false imprisonment claim falls within the statute

of limitations period because he finished his term of incarceration in Minnesota on

January 27, 2014, *see Campbell*, 2015 WL 671998, at *2, this claim is also time-barred.

After a June 6, 2011 court trial, Campbell was found guilty and sentenced to 60 months'

imprisonment with the Minnesota Department of Corrections, who is neither a party to

this suit nor part of the City, Ramsey County, Hennepin County.  *Id.*  Thus, Campbell's

involvement with the City ended when he left police custody and involvement with

Ramsey County and Hennepin County ended no later than when he left Ramsey County's

custody in July 2011, which is still outside Minnesota's six-year limitations-window.

Even if the Court assumed some involvement by the City and the Counties in

connection with Campbell's imprisonment, the statute of limitations for any false

imprisonment claim begin running at Campbell's first appearance.  *See Wallace*, 549 U.S.

at 397 ("Reflective of the fact that false imprisonment consists of detention without legal

process, a false imprisonment ends once the victim becomes held pursuant to such

process—when, for example, he is bound over by a magistrate or arraigned on charges.) While dates of Campbell's first appearance and arraignment are not the record, his criminal trial took place on June 6, 2011. *Reiser*, 2015 WL 671998, at *1. Thus, any false imprisonment ended much earlier, "when legal process was initiated against him," and Campbell's claims would still fall outside Minnesota's six-year limitations-window. The fact that all of Campbell's claims against the City, Ramsey County, and Hennepin County are barred by the statute of limitations provides an alternative basis to dismiss those claims.

### 2. *Heck v. Humphrey* Preclusion

The City, Ramsey County, and Hennepin County argue that because Campbell's criminal sentence has not been invalidated, certain claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), and thus those claims should be dismissed. (Dkt. 9 at 13-14; Dkt. 15 at 9-10; Dkt. 33 at 14.)[8]

In response, it appears Campbell disagrees whether *Heck v. Humphrey* bars his claims because he is no longer a prisoner. (Dkt. 18 at 29 ("The other side requests coyly that the court use screening laws and policies that only apply where Plaintiff is a prisoner–he is not such.").) Campbell argues that "[t]he court may not make adverse

---

[8]    The City argues that the following eleven claims are *Heck*-barred: fraud, coercion, forced confession, abuse of authority, intimidation, falsifying evidence, spoliation of evidence, perjury, false imprisonment, witness tampering, and corruption. (Dkt. 9 at 13.) Ramsey County argues that "most" of Campbell's claims including the "false imprisonment" are *Heck*-barred and seeks dismissal of the false imprisonment claim as the only claim asserted against Ramsey County Defendants. (Dkt. 15 at 9.) Hennepin County does not specify which claims are *Heck*-barred.

decisions to dismiss Plaintiff[']s lawsuit based on records which are irrelevant material laden, untimely, due process violative, inaccurate, or incomplete . . . ." (*Id.* at 29). Campbell also argues that "it is well settled that where the direct result would not be to impeach the conviction and sentence is not within the gamut of what was intended in Heck v. Humphrey, specifically where it would take another proceeding after a favorable decision in this action to render any prior conviction or sentence invalid the use here is premature." (*Id.*) Additionally, Campbell argues "[t]he court does not deal with hypothetical situations or situations which have not yet arisen and so any Heck v. Humphrey argument or defense is premature and misplaced here it appears." (*Id.*)

> In *Heck*, the Supreme Court held that:
>
> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a [42 U.S.C.] § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

512 U.S. 477, 486-487 (1994) (footnotes omitted).

In this case, Campbell seeks relief that would necessarily invalidate his state criminal conviction. In fact, Campbell's assertions are premised on the invalidity of that conviction. For example, the Complaint alleges that Campbell has "not committed

absolutely *any* crime at all" (Dkt. 1 at 8 ¶ 4 (emphasis in original)); that he was

"unlawfully incarcerated in Ramsey County jail" (*id.*); and that his "illegal conviction"

caused his daughter mental anguish and suffering (*id.* at ¶ 9). But Campbell does not

suggest, as required under *Heck*, the basis for his conviction has been invalidated. Until

Campbell's state conviction "has been reversed on direct appeal, expunged by executive

order, declared invalid by a state tribunal authorized to make such determination, or

called into question by a federal court's issuance of a writ of habeas corpus," *Heck,* 512

U.S. at 487, Campbell may not seek relief in this civil claim because it "necessarily

impl[ies] the invalidity of his conviction or sentence." *Id.* Pursuant to *Heck*, Campbell

may not challenge the legality of his state conviction through this federal civil rights

action. The Court concludes that *Heck* is an alternative basis for dismissal of the claims

against the City, Ramsey County, and Hennepin County.

### 3.    Claim Preclusion

The City and Hennepin County argue that the doctrine of res judicata bars

Campbell from pursuing certain claims in federal court because he seeks to relitigate his

prior conviction by using the Court and § 1983 as a method to relitigate his original

conviction.[9]  (Dkt. 9 at 9-13; Dkt. 33 at 11-13.)[10]

---

[9]    Ramsey County did not seek dismissal on res judicata or claim preclusion
grounds.

[10]    The City argues that claim preclusion only applies to the following ten claims:
fraud, coercion, forced confession, abuse of authority, intimidation, falsifying evidence,
spoliation of evidence, perjury, witness tampering, and corruption.  (Dkt. 9 at 9-10.)
Hennepin County, however, argues that "all of Plaintiff's claims" are barred by claim
preclusion.  (Dkt. 33 at 13.)   Campbell did not respond to the City's claim preclusion

The Eighth Circuit has held that res judicata, or claim preclusion, is determined by the forum state's law. *See Laase v. Cty. of Isanti*, 638 F.3d 853, 856 (8th Cir. 2011) ("The law of the forum that rendered the first judgment controls the res judicata analysis.") (internal quotation marks omitted). Under Minnesota law, res judicata applies as an absolute bar to a later claim when: "(1) the earlier claim involved the same set of factual circumstances; (2) the earlier claim involved the same parties or their privies; (3) there was a final judgment on the merits; [and] (4) the estopped party had a full and fair opportunity to litigate the matter." *Hauschildt v. Beckingham*, 686 N.W.2d 829, 840 (Minn. 2004) (citing *State v. Joseph*, 636 N.W.2d 322, 327 (Minn. 2001)). All four factors must be satisfied for res judicata to apply. *Id.* "Res judicata applies equally to claims actually litigated and to claims that could have been litigated in the earlier action." *Laase*, 638 F.3d at 856 (8th Cir. 2011) (quoting *Brown-Wilbert, Inc. v. Copeland Buhl & Co.*, 732 N.W.2d 209, 220 (Minn. 2007)). The Court addresses each factor in turn.

### a.    Same Set of Factual Circumstances

First, the City and Hennepin County argue the present federal case presents the same underlying facts as his prior criminal case. (Dkt. 9 at 10-11; Dkt. 33 at 12.) The Court agrees. This present case presents underlying facts nearly identical to Campbell's criminal case, which arise from his 2010 arrest and search of his storage unit. (*See* Dkt. 1 at 7-10); *see also Campbell*, 2012 WL 5476108, at *2. Therefore, the Court finds this factor is satisfied.

---

argument, and as noted above, he did not file any response to Hennepin County's Motion to Dismiss.

### b.    Same Parties or Their Privies

The City and Hennepin County also argue that the same parties or their privies
involved in Campbell's original prosecution are involved in the present federal case.
(Dkt. 9 at 11; Dkt. 33 at 12.)  "Privity requires a person so identified in interest with
another that he represents the same legal right." *Beutz v. A.O. Smith Harvestore
Products, Inc.*, 431 N.W.2d 528, 533 (Minn. 1988) (citing *McMenomy v. Ryden*, 148
N.W.2d 804, 807 (1967)).  In this case, Campbell and the City and Hennepin County
Defendants were parties involved in Campbell's original criminal case.  *See e.g.,
Campbell*, 2012 WL 5476108, at *2.  Therefore, the Court finds this factor is satisfied.

### c.    Final Judgment on the Merits

Next, the City and Hennepin County argue the original criminal proceeding
involved a final judgment on the merits.  (Dkt. 9 at 11-12; Dkt. 33 at 12.)  The record
demonstrates that the state court rendered a final judgment on the merits.  *See e.g.,
Campbell*, 2012 WL 5476108, at *2.  Therefore, the Court finds this factor is satisfied.

### d.    Full and Fair Opportunity to Litigate the Matter

Finally, the City and Hennepin County argue that Campbell had a "full and fair
opportunity to litigate the claims."  (Dkt. 9 at 12-13; and Dkt. 33 at 13.)  "[W]hether a
party had a full and fair opportunity to litigate a matter generally focuses on 'whether
there were significant procedural limitations in the prior proceeding, whether the party
had the incentive to litigate fully the issue, or whether effective litigation was limited by
the nature or relationship of the parties.'"  *Joseph*, 636 N.W.2d at 328 (quoting *Sil–Flo,
Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1521 (10th Cir. 1990)).

Here, the record supports that Campbell had a full and fair opportunity to litigate his claims. As Campbell acknowledges, he challenged his criminal conviction at the state district court, appealed to the Minnesota Court of Appeals, and, though unsuccessful, petitioned for review with the Minnesota Supreme Court. *See State v. Campbell*, No. A11-1937, 2012 WL 5476108, at *1 (Minn. App. Nov. 13, 2012), *review denied* (Minn. Jan. 29, 2013); (*see also* Dkt. 1 at 9 ¶ 8 ("I did appeal, that was subsequently denied.").) In reviewing his state court action, Campbell did not bring his constitutional claims in state court even though he was permitted to do so. Although Campbell disagrees with the state court's ruling, Campbell has not presented any evidence to suggest significant procedural limitations were placed on Campbell during that proceeding. Because Campbell could have brought his constitutional claims in his state-court proceeding, but did not do so, the Court finds this factor is satisfied.

* * *

In sum, the Court finds that all four factors required for claim preclusion to apply are satisfied. This provides an alternative basis for dismissing the following claims against the City: (1) fraud; (2) coercion; (3) forced confession; (4) abuse of authority; (5) intimidation; (6) falsifying evidence; (7) spoliation of evidence; (8) perjury; (9) witness tampering; and (10) corruption as to the City, and for dismissing all of Campbell's claims as to the Hennepin County Defendants.

### 4.    Failure to State a Plausible Claim for Relief

Ramsey County and Hennepin County also make certain claim-specific Rule 12(b)(6) arguments.

First, Ramsey County argues that the false imprisonment claim arising from Campbell's incarceration at Ramsey County Jail after his 2010 arrest by the Hennepin County Sheriff's Office should be dismissed for failure to state a claim. (Dkt. 15 at 4-5, 10-14.) "[A] defense to a false imprisonment claim exists if a jailer acts 'in reliance upon a commitment fair and valid on its face and issued by a court.'" *Lopez v. Minnesota Vikings Football Stadium*, LLC, Civ. No. 17–1179 (PAM/TNL), 2018 WL 2976000, at *4 (D. Minn. June 12, 2018) (citing *Peterson v. Lutz*, 3 N.W.2d 489, 489 (Minn. 1942)). Campbell alleges that he was originally arrested for violation of a parole warrant on August 26, 2010 and detained at the Ramsey County Jail (Dkt. 1 at 8), and the record reflects that a Ramsey County judge issued a Warrant and Order of Detention for his continued detention on September 2, 2010 (Dkt. 1-1 at 17-18, 22). Plaintiff has not alleged any facts suggesting that Ramsey County had any reason to think the parole warrant or the Warrant and Order of Detention were not fair and valid on their face. Consequently, the Court concludes that Campbell has failed to state a false imprisonment claim against Ramsey County, which is an alternative reason for dismissing that false imprisonment claim.

Second, Hennepin County argues that all of Campbell's claims against it should be dismissed for failure to state a claim under § 1981 or § 1983. (Dkt. 33 at 15-20.) The Court addresses each statute in turn.

As to Plaintiff's claims pursuant to 42 U.S.C. § 1981, that statute "prohibits racial discrimination in all phases and incidents of a contractual relationship." *Gregory v. Dillard's, Inc.*, 565 F.3d 464, 468 (8th Cir. 2009) (en banc) (internal quotation marks

omitted).  To state a claim under § 1981 against Hennepin County, Plaintiff must allege:

(1) he is a member of a racial minority; (2) the Hennepin County Defendants intended to

discriminate on the basis of race; (3) Plaintiff engaged in an activity protected by the

statute; and (4) the Hennepin County interfered with that activity.  *Id.* at 469.  Section

1981 does not provide general cause of action for race discrimination; it requires Plaintiff

to identify an impaired existing or proposed contractual relationship under which he had

or would have had rights.  *Youngblood v. Hy-Vee Food Stores, Inc.*, 266 F.3d 851, 855

(8th Cir. 2001); *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006).  Here,

Plaintiff's § 1981 claim fails because he has not plausibly alleged any contractual

relationship allegedly impaired.[11]

> As to Plaintiff's § 1983 claims, that statute provides:
>
> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.  "The essential elements of a constitutional claim under § 1983 are (1)

that the defendant acted under color of state law, and (2) that the alleged wrongful

conduct deprived the plaintiff of a constitutionally protected federal right."  *L.L. Nelson*

*Enter., Inc. v. County of St. Louis, Mo.*, 673 F.3d 799, 805 (8th Cir. 2012) (citing *Schmidt*

*v. City of Bella Villa*, 557 F.3d 564, 571 (8th Cir. 2009)).

---

[11]    To the extent Plaintiff relies on "Sovereign Citizen" theories of contract between governments and their citizens, the Court rejects those arguments.

"Public servants may be sued under section 1983 in either their official capacity, their individual capacity, or both." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). Here, however, Campbell named only Hennepin County entities, namely the Sheriff's Department and the Probation Office, not individuals.

A local governmental entity, such as a county, "may be held liable under Section 1983 only if a municipal custom or policy caused the deprivation of [a] right protected by the constitution or federal laws." *Angarita v. St. Louis County*, 981 F.2d 1537, 1546 (8th Cir. 1992). "[M]unicipal governments can be held liable for the acts of their employees in contravention of the civil rights of individuals only upon a showing that a 'policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers' is the motivating force behind the acts of those employees.'" *Williams v. Little Rock Municipal Water Works*, 21 F.3d 218, 223 (8th Cir. 1994) (quoting *Monell v. Dep't of Social Services*, 436 U.S. 658, 690 (1978)). Here, Plaintiff has not plausibly alleged that his constitutional rights were violated because of a specific policy, custom, or practice adopted by Hennepin County or any Hennepin County entity. Rather, he makes conclusory allegations of the "unadorned, the-defendant-unlawfully-harmed-me-accusation" type that are insufficient to state a claim for relief. *See Iqbal*, 556 U.S. at 678 (cleaned up). This provides an alternative basis for granting the Hennepin County Defendants' Motion to Dismiss to the extent it seeks dismissal of all claims against them for failure to state a plausible claim for relief.

## IV.    CAMPBELL'S MOTION FOR STATUS UPDATE AND
## ENTRY OF DEFAULT

In his Motion for Status Update and Entry of Default, Campbell seeks an update

on the case and entry of default against the Hennepin County entities and Public Storage

Incorporated ("Public Storage").  (Dkt. 25-2 at 2 ("Accordingly CAMPBELL hereby

moves for ENTRY and NOTING of Default against the Defendants in this case except

Ramsey County and Saint Paul (who moved to dismiss) for receiving the complaint and

summons or request to waive and being silent to date.").)  Campbell also seeks a hearing

on a motion for default judgment.  (*Id.* at 3.)

With respect to entry of default, this action was commenced on May 22, 2019

when Campbell filed his Complaint.  (Dkt. 1.)  Although Hennepin County did not

respond to Campbell's Complaint until November 5, 2019, when it filed its Motion to

Dismiss (Dkt. 31), Campbell failed to perfect service upon any Hennepin County entity

as discussed in detail in Section III.B.  "If a plaintiff fails to properly serve a defendant

. . . entry of default is not warranted."  *Edmonds v. Williams*, No. 14-4535, 2015 WL

1399035, at *1 (D. Minn. March 26, 2015) (citing *Haley v. Simmons*, 529 F.2d 78,79 (8th

Cir. 1976)).  Consequently, Campbell is not entitled to entry of default against the

Hennepin County Defendants.

As for Public Storage, even if the Court assumes Campbell has properly served

that entity, the Court recommends dismissal of Plaintiff's claims against Public Storage

because it is apparent from the face of the Complaint that Campbell's claims against

Public Storage are time-barred, and consequently also recommends denial of Plaintiff's

Motion to the extent it seeks entry of default.  Federal courts have the inherent authority to dismiss frivolous complaints on their own accord to preserve judicial resources and ensure proper judicial functioning.[12]  *See Mallard v. U.S. Dist. Court*, 490 U.S. 296, 307-08 (1989) ("Statutory provisions may simply codify existing rights or powers.  Section 1915(d), for example, authorizes courts to dismiss a 'frivolous or malicious' action, but there is little doubt they would have the power to do so even in the absence of this statutory provision.")[13]; *Porter v. Fox*, 99 F.3d 271, 273 (8th Cir. 1996).  An action is frivolous if it lacks "an arguable basis either in law or in fact"—if it is based on an "indisputably meritless legal theory" or factual allegations that are so "fanciful," "fantastic," or "delusional" as to be "clearly baseless."  *Neitzke v. Williams*, 490 U.S. 319, 325, 327-28 (1989).

Here, Campbell asserts § 1983 claims against Public Storage based on searches of that entity's records and of Campbell's rented storage unit that took place in Summer 2010.  (Dkt. 1 at 8-10, 22-23.)  Even if Public Storage were a state actor that could be

---

[12]    Although it is preferable to give notice before dismissing sua sponte, the failure to give such notice is not per se reversible error when it is patently obvious the plaintiff could not prevail based on the facts alleged in the complaint.  *Smith v. Boyd*, 945 F.2d 1041, 1043 (8th Cir. 1991).  Moreover, Plaintiff had the opportunity to address, and in fact did address, the statute of limitations in his opposition to the City's Motion to Dismiss.  (Dkt. 18 at 28.)

[13]    28 U.S.C. § 1915(d) was re-designated as § 1915(e) in 1996.  *See* 28 U.S.C. § 1915, 1996 Historical and Revision Notes.

held liable under § 1983 (which Campbell has not alleged),[14] his claims would still be frivolous because the six-year statute of limitations for claims based on those searches expired in Summer 2016 (*see* Section III.C.1).  Further, as discussed in Section III.C.1, Campbell's response to the City's statute of limitations argument (*see* Dkt. 18 at 28) has "no arguable basis either in law or fact."  Accordingly, the Court recommends dismissal of Campbell's claims against Public Storage as frivolous.[15]  *See Myers v. Vogal*, 960 F.2d, 750, 750-51 (8th Cir. 1992) ("[T]he district court did not commit error in dismissing Myers's complaint as frivolous based on the expiration of the statute of limitations.  Although the statute of limitations is an affirmative defense, a district court may properly dismiss an in forma pauperis complaint under 28 U.S.C. § 1915(d) when it is apparent the statute of limitations has run."); *Hammond v. Delano*, 69 F.3d 541, 1995 WL 654133, at *1 (8th Cir. 1995) (per curiam) (affirming dismissal of complaint in as frivolous § 1915(d) context where it was "apparent the statute of limitations ha[d] run" based on date of incident giving rise to § 1983 claim); *see also Sundae v. Anderson*, No. Civ. 02-855 JRT/SRN, 2003 WL 24014341, at *15 (D. Minn. Apr. 24, 2003) (dismissing

---

[14]    "Private actors may incur section 1983 liability only if they are willing participants in a joint action with public servants acting under color of state law."  *Sanders v. City of Minneapolis, Minnesota*, 474 F.3d 523, 527 (8th Cir. 2007).

[15]    The Court recognizes that Campbell paid the full filing fee for this action. Nevertheless, "there is little doubt" that federal courts would have the power to dismiss frivolous actions even in the absence of the statute providing for dismissal in *in forma pauperis* actions.  *See Mallard*, 490 U.S. at 307-08 ("Section 1915(d), for example, authorizes courts to dismiss a 'frivolous or malicious' action, but there is little doubt they would have the power to do so even in the absence of this statutory provision.").

claims as "frivolous" based on statute of limitations); *Fish Tale Credit LLC v. Anderson*, Court File No. 16-cv-4068 (JRT/LIB), 2017 WL 2729564, at *4 (D. Minn. June 6, 2017) ("In addition, the Court notes that the Eighth Circuit has long held that a District Court may *sua sponte* dismiss a case pursuant to Rule 12(b)(6) if it appears from the face of the Complaint that the applicable statute of limitations bars the action.") (citing *Smithrud v. City of St. Paul*, 746 F.3d 391, 396 n.3 (8th Cir. 2014)). For these reasons, the Court recommends denying Campbell's Motion for Status Update and Entry of Default and dismissal of Campbell's claims against Public Storage on frivolity grounds.[16]

## V.    RECOMMENDATION[17]

Based on the above, and on the files, records, and proceedings herein, **IT IS RECOMMENDED THAT**:

1. Defendants Hennepin County Sheriffs and Hennepin County Parole Probation Office's Motion to Dismiss (Dkt. 31) be **GRANTED** and Plaintiff James Paul Campbell's claims against them be **DISMISSED WITHOUT PREJUDICE**;

2. Defendant Saint Paul Police Department's Motion to Dismiss (Dkt. 7) be **GRANTED** and Plaintiff James Paul Campbell's claims against it be **DISMISSED WITHOUT PREJUDICE**;

---

[16]    With respect to Plaintiff's request for a status update, this Report and Recommendation renders that request as moot.

[17]    Because the Court has recommended dismissal without prejudice of the claims against Defendants Hennepin County Sheriffs, Hennepin County Parole Probation, Ramsey County Sheriffs, and City of Saint Paul Police Department based on the failure to sue an entity subject to suit and improper service, the Court does not make specific recommendations as to the Rule 12(b)(6) grounds for the City and County entities.

3. Defendant Ramsey County Sheriffs' Motion to Dismiss (Dkt. 13) be

   **GRANTED** and Plaintiff James Paul Campbell's claims against it be

   **DISMISSED WITHOUT PREJUDICE**;

4. Plaintiff James Paul Campbell's claims against Public Storage Incorporated be

   **DISMISSED WITH PREJUDICE**; and

5. Plaintiff James Paul Campbell's Motion for Update, to Enter and Note Default,

   and for Hearing if Needed, Against and As to All Defendants Except Saint

   Paul and Ramsey County (Dkt. 25) be **DENIED AS MOOT** with respect to

   the request for an update and **DENIED** as to the request for entry of default

   and a hearing on default judgment.


DATED: January 21, 2019                    _s/Elizabeth Cowan Wright_
                                           ELIZABETH COWAN WRIGHT
                                           United States Magistrate Judge


## NOTICE

This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under District of Minnesota Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. D. Minn. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in D. Minn. LR 72.2(c).